USDC SDNY
DOCUMENT
**ELECTRONICALLY FILED**
DOC #:_____
DATE FILED: 10/12/17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

UNITED STATES OF AMERICA,          :
                                   :          17 Cr. 19 (RMB)
                    Government,     :
                                   :          **DECISION & ORDER**
        -against-                  :
                                   :
RICHARD USHER, ROHAN               :
RAMCHANDANI, AND CHRISTOPHER       :
ASHTON,                            :
                                   :
                    Defendants.    :
------------------------------------------------------------X

**I.     Background**

On January 10, 2017, Defendants Richard Usher, Rohan Ramchandani, and Christopher

Ashton were charged in the Southern District of New York in a one-count indictment with

conspiracy to restrain trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. (Indictment,

dated Jan. 10, 2017.) The Government alleges that "[f]rom at least as early as December 2007

and continuing at least through January 2013," Defendants and others "participated in a

combination and conspiracy to suppress and eliminate competition for the purchase and sale of

EUR/USD [i.e. Euros/U.S. Dollars] in the United States and elsewhere by fixing, stabilizing,

maintaining, increasing, and decreasing the price of, and rigging bids and offers for, EUR/USD

in the FX Spot Market [i.e. foreign currency exchange spot market]." (Id. ¶ 18.). Trial of this

action is scheduled for June 4, 2018. (Hr'g Tr., dated July 17, 2017, at 18.)

On August 15, 2017, Defendants filed an application for a bill of particulars seeking the

"trades, bids, and offers (and the corresponding communications, e.g., call or chatroom passage

on that day **the government intends to rely upon at trial**." (Letter from Anjan Sahni et al. to

Hon. Richard M. Berman, dated Aug. 15, 2017 ("Defendants' 8/15/17 Letter"), at 4 (emphasis

added).) Defendants stated that the Government had provided them with "trading data for millions of transactions" but had not identified "which trades or how many the government contends represent unlawful collusion." (Id. at 1.)

On August 16, 2017, the Government opposed Defendants' application for a bill of particulars, stating that "the law forbids Defendants from using a bill of particulars to get a preview of the Government's trial evidence or legal theories." (Letter from Jeffrey D. Martino et al. to Hon. Richard M. Berman, dated Aug. 16, 2017, at 1.) The Government also advised that it had "already committed to Defendants that it will provide an early trial exhibit list, which will [] specify the particular instances of alleged collusive trading and means of communication. In line with typical practice in the Southern District of New York in similar cases, the Government has committed to providing this [information] 60 to 90 days prior to trial." (Id. at 1-2.)

The Court scheduled a hearing regarding Defendants' application for a bill of particulars for September 6, 2017. (See Order, dated Aug. 17, 2017.) The Court also directed the parties "to meet and confer" in advance of the hearing to seek resolution of their discovery dispute. (Id.) Accordingly, the parties met on August 25 and 30 – and they exchanged proposals following their discussions – but "were unable to reach an agreement." (Letter from Anjan Sahni et al. to Hon. Richard M. Berman, dated Sept. 5, 2017, at 1.)

At the September 6, 2017 hearing, Defendants emphasized that their principal objective in seeking a bill of particulars was to obtain the "trading data." (Hr'g Tr., dated Sept. 6, 2017 ("9/6/17 Tr."), at 31.) Defendants requested, as they had in their written application, that the Government produce a list of trades that the Government intends to rely on at trial. (Id. at 18.) In response, the Government offered that, on March 3, 2018 (i.e. 93 days prior to trial), "the government [would] identify specific lines or ranges of lines [of trading data] that it may use in

2

its case-in-chief at trial." (Id. at 37.) With this offer, the Court perceived that the parties were approaching an agreement as to Defendants' request for trade data, and the Court asked the parties "to go off the record and . . . talk [further] and see if you agree." (Id. at 38.)

Approximately an hour later, when the hearing resumed, the Court was surprised to learn that the parties had still failed to reach an agreement. (See id. at 39.) The Court was even more surprised to learn that when the parties met and conferred, Defendants appeared to have broadened their request for trading data. (See, e.g., id. at 39-43.) That is, Defendants argued that they needed "the underlying trades" associated with "every chat or audio that the government is going to use as evidence of coordinated trading," (id. at 39), i.e. whether or not the Government intended to rely on that trading data at trial. See p. 1:13, above.

The Government also perceived that during their efforts to reach agreement, Defendants had expanded their request for trading data:

> We walked in today with the request for particularity by the defendants for which trades, bids, and offers the government intends to rely upon at trial. That is the only issue before the Court right now and that's what we met and conferred on and that's why I thought we were very close in reaching agreement on. **Now we just learned in our ["meet and confer"] conference that they don't only want the trading -- the trades, bids, and offers [] that we will use at trial, they [also] want the trades, bids and offers that we don't intend to use at trial**.

(9/6/17 Tr. at 43 (emphasis added).)

Notwithstanding that it perceived Defendants seemed to be moving the discovery goalposts, on September 12, 2017, the Government enlarged its disclosure proposal and, in fact, offered to provide Defendants with the trading data they had requested (i.e. whether or not it was to be used at trial). (See Letter from Jeffrey D. Martino et al. to Hon. Richard M. Berman, dated Sept. 12, 2017 ("Government's 9/12/17 Letter"), at 1-2.)

Defendants have been promised more discovery than they sought. See pp. 1-3, above. In light, among other things, of the Government's good faith agreement to provide Defendants with the trading data they sought, Defendants' application for a bill of particulars is denied. See, e.g., United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004).

**For the reasons set forth below, the Court denies Defendants' letter motion for a bill of particulars and approves the Government's discovery proposal.**[1]

## II.   Legal Standard

"[A] bill of particulars is not necessary where the government [makes] sufficient disclosures concerning its evidence and witnesses by other means." Id. (internal quotation marks omitted). "[N]o bill is required if the government has provided the desired information through pretrial discovery or in some other satisfactory manner." Charles Alan Wright et al., Federal Practice and Procedure § 130 (4th ed. 2012).

"In light of [Second Circuit precedent], bills of particulars are not routinely granted." United States v. Mahaffy, 446 F. Supp. 2d 115, 119 (E.D.N.Y. 2006).

## III.   Analysis

### (1) A Bill of Particulars Is Not Necessary

The core of Defendants initial request is that the Government provide trading data that the Government planned to rely upon at trial. See p. 1:13, above. (See Defendants' 8/15/17 Letter at 4.) The Government agreed to provide that trading data on September 12, 2017. (See Government's 9/12/17 Letter at 1-2.) Indeed, Defendants acknowledged that "the government has [] agreed to provide the trading data we need to defend this case." (Letter from Anjan Sahni

---

[1] Any arguments raised by the parties but not specifically addressed herein have been considered by the Court on the merits and rejected.

et al. to Hon. Richard M. Berman, dated Sept. 13, 2017 ("Defendants' 9/13/2017 Letter"), at 3.)
The Court finds that a bill of particulars is unnecessary in these circumstances because, as here,
"a bill of particulars is not necessary where the government [makes] sufficient disclosures
concerning its evidence and witnesses by other means." Chen, 378 F.3d at 163 (internal
quotation marks omitted). "If the information [a] defendant seeks 'is provided in the indictment
or in some acceptable alternate form,' such as discovery or other correspondence, no bill of
particulars is required." United States v. Connolly, 2017 WL 2537808, at *1 (S.D.N.Y. May 24,
2017) (quoting United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam)).

Many courts in the Second Circuit, along with practitioners and academics, agree that
motions for a bill of particulars are rarely granted, especially where, as here, the information
Defendants are seeking is already available to them. See, e.g., Mahaffy, 446 F. Supp. 2d at 119
("In light of [Second Circuit precedent], bills of particulars are not routinely granted."); United
States v. Rodriguez, 539 F. Supp. 2d 592, 599 (D. Conn. 2008) ("As part of its argument against
producing a bill of particulars, the government argued that bills of particulars are rarely ordered
in the District of Connecticut. In my experience, that is true."); Symposium on Science and the
Rules of Legal Procedure, 101 F.R.D. 599, 613, 615-16 (1983) (statement of Professor Stephen
A. Saltzburg indicating that defendants "can ask for a bill of particulars" but that "few of these
[requests] are granted"); Lia N. Ernst & Kenneth M. Mogill, Examination of Witnesses § 2:14
(2d. ed. 2016) (indicating that motions for bills of particulars are "infrequently granted"); see
also Robert G. Morvillo et al., Motion Denied: Systematic Impediments to White Collar
Criminal Defendants' Trial Preparation, 42 Am. Crim. L. Rev. 157, 174-75 (2005).

There is no need for a bill of particulars in this case. See, e.g., Bortnovsky, 820 F.2d at
574. As noted, the Government has agreed to provide Defendants with the trading data they

requested, whether relied upon by the Government at trial or not. Where, as here "the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." Id.; see also Wright et al., Federal Practice and Procedure § 130 ("[N]o bill is required if the government has provided the desired information through pretrial discovery or in some other satisfactory manner."). A bill of particulars is simply not necessary where the government intends to make "sufficient disclosures concerning its evidence and witnesses by other means." Chen, 378 F.3d at 163 (internal quotation marks omitted).

### (2) The Government's Discovery Plan Is Reasonable

Under the Government's discovery proposal, Defendants would obtain the trading data "either two weeks after the Court provides its opinion and order on dispositive motions or March 1, 2018 [(i.e. 95 days prior to trial)], whichever is earlier." (Government's 9/12/17 Letter at 1-2.) The Government would also update the trading data on May 3, 2018 (i.e. 32 days prior to trial) as follows. (See id.)

- Within two weeks of this Court's Order, the Government will identify no more than 200 episodes involving alleged coordination of trading between the alleged co-conspirators for potential use in its case-in-chief at trial. For each episode, the list will provide the date, Bates number of the associated chat or phone call that describes the episode, and the approximate time of each episode.

- The Government will provide two updates to this list, on the following dates:

  o November 3, 2017 it would reduce the list to no more than 150 episodes, including any good-faith substitutions;

  o December 15, 2017 it would reduce the list to no more than 75 episodes, including any good-faith substitutions.

- The Parties will exchange (i) initial trial exhibit lists for case-in-chief evidence, either two weeks after the Court provides its opinion and order on dispositive motions or March 1, 2018, whichever is earlier (i.e. more than three months before trial), and (ii) final trial exhibit lists for case-in-chief evidence on May 3, 2018 (one month before trial).

- Along with its initial and final trial exhibit lists, the Government will update its list of alleged collusive trading episodes. **For each episode – regardless of whether the Government intends to introduce trading data for that episode at trial – the Government will identify the specific trades, orders, bids, and offers relevant to the episode.**

See id.

This proposal is, in the Court's view, reasonable.

The parties agree that Connolly is an "instructive" case. (9/6/17 Tr. at 33 (Government counsel stating: "I think the Connolly [case] is actually instructive"); see, e.g., id. at 29 (Defense counsel taking the same position).) The Court believes that Connolly supports the proposed discovery schedule at pp. 6-7, above. Defendants will have **at least** 95 days to analyze the trading data. (See Government's 9/12/17 Letter at 1-2.); see also Connolly, 2017 WL 2537808, at *7.[2]

## IV.    Conclusion & Order

For the reasons stated above, the Court denies Defendants' letter motion for a bill of particulars and approves the Government's proposed discovery plan.

Dated: October 12, 2017
       New York, New York

**RICHARD M. BERMAN**
**U.S.D.J**

---

[2] The Connolly decision does not support Defendants' request for a bill of particulars. In Connolly, the Government did **not** acquiesce in the defendants' request for trading data. See 2017 WL 2537808, at *3-*7. This is the opposite of what occurred here.