

**U.S. Department of Justice**

Antitrust Division

---

*New York Office*

26 Federal Plaza  
Room 3630  
New York, New York 10278-0004

212/335-8000

FAX 212/335-8023

November 22, 2017

Honorable Richard M. Berman  
United States District Judge  
Southern District of New York  
500 Pearl Street  
New York, New York 10007-1313

                      Re:    *United States v. Usher et. al.*, 17 Cr. 19 (RMB)

Dear Judge Berman:

      The Government submits this letter in response to Defendants' November 16, 2017 letter to the Court in which the Defendants request that the Court order the Government to seek to obtain statements by a cooperating witness made to, and in the possession of, three foreign regulatory authorities: the U.K. Serious Fraud Office ("SFO"), the Australia Competition & Consumer Commission ("ACCC") and the Korea Fair Trade Commission ("KFTC"). Because the Government did not conduct a joint investigation with these foreign authorities, it is not obligated to seek from them the statements the Defendants request. Accordingly, the Defendant's request should be denied.

      The Defendants also request that the Government seek to obtain these statements from certain cooperators, should those cooperators possess those statements. The Government has been informed that no cooperator has statements made by the cooperating witness to the SFO and KFTC. For the reasons set forth below, the Government cannot be required to request that, despite not having these statements, the cooperators nevertheless seek to obtain these statements from the SFO or KFTC on the Government's behalf, because these statements are outside the scope of permissible discovery.

      The Government learned today, however, that despite what it was told earlier, counsel for the cooperating witness may possess an unofficial copy of the statement that the cooperating witness made to the ACCC. If counsel confirms that they in fact possess such a copy, the Government will request that counsel provide that copy to the Government. However, counsel for the cooperating witness informed the Government that at present, they are not in a position to determine whether, among other things, they will assert work product or other privilege with respect to the document, or whether applicable Australian law permits further disclosure of this document. The Government therefore respectfully requests leave of the Court to supplement this submission once the Government has further information.

## The Law in the Second Circuit Dictates that the Government's Discovery Obligations Extend Only to Joint Investigations

The Government takes its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) seriously. Under *Brady*, prosecutors are required to "learn of any favorable evidence known to other members of the prosecution team." *United States v. Garcia*, 509 F. App'x 40, 42–43 (2d Cir. 2013) (citing *Strickler v. Greene,* 527 U.S. 263, 280–81 (1999)). The Second Circuit has expressed concern that "the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'" *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (quoting *United States v. Gambino,* 835 F.Supp. 74, 95 (E.D.N.Y.1993), *aff'd,* 59 F.3d 353 (2d Cir.1995), *cert. denied,* 517 U.S. 1187 (1996)). Thus, when, as here, multiple agencies conduct parallel investigations into the same industry, under Rule 16 and *Brady* the Government must disclose "documents material to the defense that (1) it has actually reviewed or, (2) are in the possession, custody, or control of a government agency so closely aligned with the prosecution so as to be considered part of the prosecution team." *United States v. Finnerty*, 411 F. Supp. 2d 428, 433 n.3 (S.D.N.Y. 2006). Viewed another way, when the relevant materials are in the possession of another agency, the relevant analysis concerns the extent to which the prosecutors conducted a "joint investigation" with that other agency. *See United States v. Martoma,* 990 F. Supp. 2d 458, 459 (S.D.N.Y. 2015).

To determine whether a joint investigation exists "involves consideration of the degree of cooperation between the agencies, such as their coordination in conducting witness interviews and otherwise investigating the facts of the case." *Id.* at 461 (internal quotation marks omitted). Central to that inquiry is whether the Government jointly gathered facts with another agency, because "joint fact gathering is part of what is referred to as 'joint investigation.'" *United States v. Gupta*, 848 F. Supp. 2d 491, 493-94 (S.D.N.Y. 2012).

In this case Defendants seek to compel the U.S. Department of Justice to request documents in the possession of foreign enforcement agencies. It is questionable that "*Brady* has extraterritorial reach" and there is little case law to support an argument that the Government must "search through the files of some other country's government in order to locate potentially exculpatory material from parallel investigations." *United States v. Connolly*, 2017 WL 945934, *8 (S.D.N.Y. Mar. 2, 2017) (stating that the court has found no case law supporting either proposition). When the court in *Connolly* was presented with such a novel argument, it held that discovery of documents held by foreign sovereigns is limited, and "is (1) triggered only when the Government has engaged in a joint investigation (and not merely parallel investigation) with that agency; and (2) even then, the obligation is limited to making a request to obtain any exculpatory materials located abroad." *Id.* As the court made clear in *Connolly*, limits "on the Government's *Brady* obligations make sense in light of well-established principles of foreign sovereignty that limit the reach of the U.S. Government's powers." *Id.*

## The Government Did Not Conduct a Joint Investigation with the SFO, ACCC, or KFTC

The Government investigated conduct in the foreign exchange spot market at the same time that other domestic agencies and foreign jurisdictions had their own investigations into conduct in this market. However, at no time did the Government conduct a joint investigation with the SFO, ACCC or KFTC, and the Government is therefore not required to request the statements the Defendants seek. Here, the Government did not attend *any* witness interviews with representatives from the SFO, ACCC or KFTC. Moreover, the Government did not share documents or investigative material with these foreign agencies, did not give or receive input into investigative strategy, did not jointly decide which witnesses each entity would seek to interview, and did not include these authorities in the Government's charging decisions. The contacts the Government had with these authorities were of a ministerial nature. In the case of the SFO, Government attorneys and SFO representatives had high-level discussions about the nature and scope of their parallel investigations, procedural status, and rough time frame for announcing resolutions with targets, as well as educated one another about procedural differences between their jurisdictions. The contacts Government attorneys had with representatives from the ACCC and KFTC were similar, focusing primarily on general investigation status and scope, procedural questions, and timing of certain interviews and other procedural steps that could be taking place in both jurisdictions, to avoid inconvenience.

The Government has had substantive factual interaction – that is, jointly attended interviews or proffers with – only one foreign agency, the United Kingdom Financial Conduct Authority ("FCA"). While the two entities investigated and made charging decisions independently, there were nevertheless occasions during which both entities simultaneously attended meetings or interviews in which both had an independent interest. Per the decision in *Connolly*, the Government requested that the FCA review its notes for any meetings or interviews it attended along with the Government, which the FCA voluntarily and graciously agreed to do. To this end the FCA did provide certain materials to the Government and the Government is in the process of reviewing the material for anything potentially exculpatory or impeaching.

The Defendants cannot point to *any* instances in which the Government jointly gathered facts with these other foreign agencies. Instead, Defendants rely on public statements, pertaining only to the SFO, which the Government made when announcing charges in a related, but separate, prosecution. *See* November 16, 2017 Letter from Defendants Pg. 5 (citing press releases announcing charges against five corporate entities).[1] The Government remains grateful for the assistance it received—which took the form detailed above—from foreign authorities while conducting the investigation related to this matter. Diplomatic statements of gratitude do not, however, convert the separate investigations of the SFO, ACCC or KFTC into joint investigations with the U.S. Department of Justice, in the absence of any joint fact gathering between these agencies.

---

[1] Even assuming that statements to the press have any bearing on whether the Government in fact conducted a joint investigation with these agencies, the Government notes that the Defendants fail to point to any such statements made by Government officials concerning the ACCC or KFTC.

The sole basis for extending the scope of permissible discovery to documents in the custody and control of other authorities is the existence of joint fact gathering between the Government and that other authority. *See Connolly*, 2017 WL 945934, *7. Yet the Defendants suggest that some quantification of the ease of obtaining foreign-located documents should be included in the analysis, arguing that "the Government can easily obtain this evidence, and Defendants cannot." Def. Ltr. Pg. 6. There is no legal basis for this argument, as the Government cannot seek materials on behalf of others—including Defendants—through, in the case of the SFO for example, the Mutual Legal Assistance in Criminal Matters process with the United Kingdom.[2] *See* Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters, U.S.-U.K., art. 1, ¶ 3, Jan. 6, 1994, T.I.A.S. 96-1202. The Defendants, however, could seek this information themselves through letters rogatory.

Lastly, the Defendants' observation that the cooperating Government witnesses may have a right to request the statements under foreign law (Def. Ltr. at 6) provides no basis for an order requiring the Government to direct these cooperators to request these statements from foreign agencies and, if successful, produce them to the U.S. Department of Justice. The Government is not itself required to seek the statements; it necessarily follows that the Government cannot then be required to insist that cooperating witnesses seek these statements as a condition of their cooperation. Such a requirement would impose upon cooperating witnesses an obligation that the Government does not itself have. The Government should not be required to seek to obtain these statements, whether through normal diplomatic channels or through the agency of its cooperators, because these statements are outside the scope of permissible discovery.

For the reasons cited above, the Defendants' requests should be denied.

Respectfully submitted,

Jeffrey D. Martino
Chief, New York Office

Bryan C. Bughman
Trial Attorney
Antitrust Division
U.S. Department of Justice
26 Federal Plaza, Suite 3630
New York, New York 10278

cc: all defense counsel (via email and ECF)

---

[2] The Government's position is that because it did not conduct a joint investigation with the SFO, ACCC or KFTC, it would only seek the statements through formal channels as provided by treaty with each jurisdiction. But because the Government did attend witness interviews with the FCA, it determined that it would ask the FCA to voluntarily provide materials relevant to these interviews.